## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LEONARD KEEN,

     Plaintiff,

v.                                   Case No. 8:12-cv-305-T-24-EAJ

BOVIE MEDICAL CORPORATION and
ANDREW MAKRIDES,

     Defendants.

_____/


## <u>ORDER</u>

This cause comes before the Court on Plaintiff Leonard Keen's ("Keen") motion for summary judgment. [Doc. 90]. Defendant Bovie Medical Corporation ("Bovie") opposes the motion. [Doc. 106]. Also before the Court is Bovie's motion for summary judgment. [Doc. 93]. Keen opposes the motion. [Doc. 108].

Keen, formerly employed as Bovie's vice-president and general counsel, alleges that Bovie breached his employment contract by failing to, *inter alia*, pay the severance required after terminating him without cause. He also alleges that Bovie terminated him in violation of the Florida Whistleblower Act, Fla. Stat. § 448.101, *et seq.*, and the Employment Retirement Income Security Act, 29 U.S.C. § 1140, *et seq.* Bovie claims that the employment contract is unenforceable as contrary to public policy and that Keen's conduct during contract negotiations constituted a breach of fiduciary duty and fraud in the inducement. Further, Bovie alleges that Keen's post-termination conduct—wiping the hard-drive of the Bovie-owned laptop computer—

1

was a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*., a breach of fiduciary duty, and conversion.

For the reasons stated herein, Keen's motion is granted in part and denied in part, and Bovie's motion is granted in part and denied in part.

## I.   **BACKGROUND**

### A.  **NEGOTIATION OF KEEN'S EMPLOYMENT AGREEMENT**

Bovie and Keen's relationship began around November 2005, when Bovie engaged Keen as its outside counsel.  [Doc. 90, Ex. B].  In October 2009, Bovie's board of directors authorized Bovie to pursue hiring Keen as its Vice-President and General Counsel.  [Doc. 105 at ¶ 1]. Keen began negotiations with the designated Bovie representatives, Gary Pickett and Steve MacLaren.  [Doc. 93, Ex. H - Pickett Tr. 69:2-12].  At that time, Pickett was Bovie's chief financial officer and secretary, and MacLaren served as an independent board member and chair of the board's compensation committee.  [*Id.* at 25:2-23, 70:18-72:15].

Keen exchanged emails with Pickett and MacLaren regarding the proposed drafts of his employment contract, which Keen had prepared.  [Doc. 108, Comp. Ex. G; Doc. 116 at 5]. Pickett provided Keen with a copy of the employment agreement for Moshe Citronowicz, Bovie's chief operating officer at the time, and stated that Citronowicz's contract was the same as the contracts for Robert Saron, Bovie's president and chief sales and marketing officer, and Andrew Makrides, Bovie's chief executive officer.  [Doc. 108, Comp. Ex. G; Doc. 93, Ex. S – Citronowicz Tr. 46; Doc. 93, Ex. H - Saron Tr. 20:13-14].

In a December 24, 2009 email to Pickett, Keen attached a draft of his employment contract.  [Doc. 108, Ex. G].  At a December 29, 2009 board of directors meeting, Pickett described Bovie's proposal for hiring Keen under a three-year self-renewing employment

contract that was similar to the contracts for Makrides, Saron, and Citronowicz, and included a $150,000 base salary and 100,000 in unrestricted stock options.  [Doc. 105 at ¶ 1].  The board authorized Pickett to proceed with the hiring of Keen.  [*Id.*]

On January 11, 2010, Pickett requested Peter Pardoll, an independent board member, ask Allan Allweiss—an attorney and Pardoll's brother-in-law—to review Keen's proposed employment agreement.  [Doc. 108, Comp. Ex. I; Doc. 93, Ex. H - Pickett Tr. 132:1-13, 136:3-23].  On the same day, Allweiss emailed Pardoll and Pickett, requesting they call him so he could share the results of his review of the contract.  [Doc. 105 at 2].   In a January 15, 2010 email to Pickett and MacLaren, Keen attached a revised draft of the employment contract and stated, "As you mentioned that you had outside counsel on the matter, I know the Company is well-represented."  [Doc. 108, Ex. J].

On January 21, 2010, Pickett emailed the board of directors to present Keen's final employment agreement for review and approval.  [Doc. 105 at 8].  Alfred Greco, Bovie's outside counsel for securities-related matters, was included on this email.  Pickett summarized several revisions to the contract that had occurred after the December 29, 2009 board meeting and asked for a response from each board member either approving the contract or requesting another board meeting to further discuss the contract terms.   Although suggesting minimal revisions to the language of the stock option provision, Greco stated that the contract looked fine.  [Doc. 105 at 8; Doc. 108-11].  No board member requested another meeting.  On January 28, 2010, Keen provided Pickett and MacLaren a final draft of his employment agreement.  [Doc. 116 at 30].

## B.  KEEN'S EMPLOYMENT AGREEMENT

On March 2, 2010, Keen executed the employment agreement, accepting the position of Bovie's Vice-President and General Counsel.   [Doc. 90, Ex. B].   Keen's duties included

3

reporting to the chief operating officer and performing "additional duties as may reasonably be assigned to" him by the board of directors.  [*Id.* at § 2].  Keen's compensation included a base salary, opportunity for bonuses, and stock options.  [*Id.* at § 5].  Keen was also entitled to employee benefits, including life, medical, and dental insurance.  [*Id.* at § 8].

Unless terminated under Section 11 of the agreement, Keen was employed for a self-renewing three-year term.  [*Id.* at § 3].  Further, at the end of each year during the term, the term "automatically extended by an additional year unless" Bovie provided Keen with advance notice—at least one year and one day—of nonrenewal.  [*Id.*]

Section 11 defines Bovie's methods of termination—"Termination Without Cause" and "Termination For Cause."  Section 11(e) defines "Termination For Cause" as termination by Bovie based on Keen's violation of non-compete and trade secret provisions or guilt of any crime of moral turpitude.  Section 11(c) defines "Termination Without Cause" as "termination by the Company, <u>without cause</u>, with the majority approval of the Board of Directors of the Company, at any time upon at least thirty (30) days prior written notice to the Employee," subject to the terms set forth in Section 11(d):

> If the Company (i) imposes a Termination Without Cause, (ii) provides Employee with a Non-Renewal notice, (iii) fails to meet its obligations to the Employee on a timely basis, or (iv) undergoes a change in the control of the Company . . . the Employee may elect to terminate this Agreement upon at least thirty (30) days prior written notice to the Company.  If any of the preceding events (i), (ii), (iii), or (iv) occurs, and the Employee provides Company with at least thirty (30) days advance written notice, the Company shall pay the Employee a lump sum severance equal to three (3) times the compensation and benefits . . . .

### C.  KEEN'S EMPLOYMENT

During his employment, Keen's duties included attending board of director meetings upon invitation.  [Doc. 93, Ex. G – Keen Tr. 22:1-24].  He also participated in decisions

regarding non-legal matters.  For example, Keen proposed various cost-cutting measures at a September 23, 2010 board meeting.  [Doc. 108, Ex. Q.].

By March 2011, the working relationship between Keen and Bovie's board members, executive officers, and other employees began deteriorating.  [Doc. 108 at 10; Doc. 93, Ex. G – Keen Tr. 82:16-84:12; Doc. 93, Ex. O – Makrides Tr. 180].   On March 12, 2011, Pickett sent an email to various recipients, including Keen, attaching a draft of Bovie's 10-K form for review.  [Doc. 93, Ex. M].   In response, Keen circulated a draft showing his comments and proposed revisions to the 10-K form.   [*Id*.].    In the 10-K form's section regarding employment agreements, Keen stated, "You may wish to review paragraph 11 of my contract, which varies a little bit from [Makrides's, Saron's, and Citronowicz's contracts] and adjust the language . . . ."  [*Id*.].   According to Bovie, this was the first time it discovered the effect of Keen's severance provisions.  Keen was then asked to, but did not, revise his contract to conform it with the other executives' contracts.  [Doc. 93, Ex. O – Makrides Tr. 149:7-20].

On March 18, 2011, Bovie's board of directors began discussing Keen's employment.  [Doc. 93, Ex. P].   Further, a March 22, 2011 memorandum reported Keen's "clear insubordination" in refusing to attend a meeting as requested by Citronowicz.  [Doc. 93, Ex. G – Keen Tr. 92:2-7].   At some point, Keen's duties were reduced to legal matters.  [Doc. 93, Ex. O – Makrides Tr. 198].   In April 2011, Bovie began discussions with Keen regarding proposed terms for his voluntary exit.  [Doc. 108, Ex. T; Doc. 93, Ex. G – Keen Tr. 60:4-5, 60:24-25-61:1, 115; Doc. 93, Ex. O – Makrides Tr. 232].

On October 18, 2011, Bovie's board of directors—including Saron, Pickett, and Citronowicz—discussed "the situation pertaining to [Bovie]'s relationship with" Keen.  [Doc.

93, Ex. R].  The board unanimously gave Makrides "the authority to terminate the employment of [Keen], such authority to be exercised in [Makrides's] discretion."  [*Id*.].

### 1.  Emails regarding alleged violations of law

Keen appears to identify three instances in which he objected to Bovie's allegedly illegal conduct.  [Doc. 34 at 8-9].  First, on September 4, 2010, Keen emailed Saron, Citronowicz, and Pickett regarding his review of and comments to Bovie's product distribution agreements.  [Doc. 108, Ex. V].   Regarding one particular section of an agreement, Keen questioned the incentive provisions "in light of the prohibitions of 42 U.S.C. § 1302a–7b(b)," a federal social security statute.  [*Id*.]  He stated, "Please explain how we can reconcile the incentive rebate . . . with the apparent illegality."  [*Id*.]

Second, in a July 7, 2011 email to Saron, Citronowicz, and Pickett, Keen provided action items for renewing a product distribution agreement.  [Doc. 93, Ex. V].  Referencing California Proposition 65, Keen stated that "[w]e agreed in our meeting that compliance with this state law was unavoidable and mandatory" but "[we] did not resolve to meet with . . . others on implementation to ensure such compliance."  [*Id*.].  He "recommend[ed] a small workgroup" to ensure compliance.  [*Id*.].

Third, in a November 21, 2011 email to Saron, Citronowicz, and Pickett, Keen provided his comments after reviewing a product distribution agreement.  [Doc. 93, Ex. W].   He commented that, with respect to a particular section of the agreement, "Bovie is required to comply with California Proposition 65 respecting known toxic or carcinogenic materials."  [*Id*.].  Recalling that "Bovie does not monitor and update its information against this law (i.e., California Health and Safety Law § 25249.5 et seq.)," Keen advised that "it would be improper"

to promise compliance, unless Bovie could commit to doing so, and he "recommend[ed] we take this element seriously."  [*Id*.].

### 2.  Enrollment in medical benefits

In December 2010, Keen elected to participate in Bovie's life insurance and long-term disability income programs, but he declined medical coverage.  [Doc. 93, Ex. X].   On December 1, 2011 and December 2, 2011, Bovie's human resources manager, Vera MacElroy, issued memoranda to Keen and various recipients, stating that they were scheduled to attend a 3 p.m. open enrollment meeting regarding employee benefits on December 9, 2011.  [Doc. 108-1].

In a December 2, 2011 email to Saron, Pickett, and Citronowicz, Keen stated he planned to work on Friday, December 9, 2011—rather than Thursday, as previously planned—in part because "HR is conducting a mandatory meeting for Open Enrollment."   [*Id*.].   Other than MacElroy and the email recipients, Keen does not recall discussing the benefits enrollment meeting with any other Bovie employee.  [Doc. 93, Ex. G – Keen Tr. 151:15-154:5].

### D.  KEEN'S TERMINATION

Bovie asserts that "the final straw that led to [Keen]'s termination occurred shortly" after the October 18, 2011 board of directors meeting, during which the board authorized Makrides to terminate Keen at his discretion.   Specifically, Keen allegedly failed to properly prepare Makrides for a November 16, 2011 mediation.

In a December 9, 2011 meeting, Saron told Keen that he was terminated.  [Doc. 93, Ex. N – Saron Tr. 155:3-25].   MacElroy also participated in the termination meeting.   [*Id*.].   Keen received a letter, dated December 9, 2011 and signed by Saron, stating "[t]his will confirm that your employment . . . is terminated effective today."  [Doc. 93, Ex. T; Doc. 93, Ex. G – Keen Tr.

208-11].   Keen did not receive the severance set forth in Section 11(d) of his employment agreement.

### E.  POST-TERMINATION: LAPTOP

Prior to his employment with Bovie, Keen owned a Dell laptop.  [Doc. 93, Ex. G – Keen Tr. 167].  The laptop contained files related to Keen's role as outside-counsel for Bovie and as counsel for non-Bovie clients.  [*Id*. at 168:17-21].

After beginning his employment with Bovie, Keen transferred ownership of the laptop to Bovie in exchange for $1,500, with the understanding that Keen would continue to use the laptop.  [*Id*. at 168:15-17; Doc. 106 at 10, Ex. CC].  In addition to the laptop, Bovie provided Keen with two desktop computers at Bovie's office.  [Doc. 93, Ex. G – Keen Tr. 167].

After Keen's termination, Keen asked for thirty days to prepare the laptop before returning it to Bovie.  Specifically, in a December 14, 2011 email to Bovie, Keen stated:

> Regarding the Dell laptop (& video display and base station), I will need at least thirty (30) days to prepare it for return to you.  It contains many personal and non-Bovie business materials.  As you may know, the equipment was at least 18 months old (in March 2010) when the Company agreed to reimburse me $1,500 for it . . . .

[Doc. 106 at 8, Ex. Z].   In response, Bovie allowed Keen thirty days to remove personal information from the laptop:

> [W]e will allow you the 30 days requested to remove all personal information.  The Dell Laptop (& video display and base station) are to be returned . . . no later than January 16, 2012.

[Doc. 106 at 8, Ex. AA].

To prepare the laptop for return to Bovie, Keen first deleted some data—which he contends is data that did not belong or relate to Bovie—from the laptop hard drive.  [Doc. 90 at 4, ¶ 12; Doc. 93, Ex. G - Keen Tr. 181:5-6, 190:12-13].  He also copied other data—which he

contends is Bovie-related data—from the laptop hard drive to a separate, external hard drive. [*Id*.].  Second, he wiped clean any and all data from the laptop hard drive by using a "special program" that "writes . . . a binary number zero to every single sector on the drive."   [Doc. 93, Ex. G - Keen Tr. 178:9-20].

In January 2012, Keen returned the laptop—but not the separate external hard drive—to Bovie.  [*Id*. at 172:11-13].  He gave the external hard drive to his attorney for purposes of this litigation.  [*Id*. at 180].  Upon realizing that the laptop contained no data, Bovie employed a forensic and data recovery examiner, who attempted to—but could not—recover any laptop data. [Doc. 90 at 14, Ex. C].  The examiner reported that the data was unrecoverable.  [*Id*.].

### F.  LITIGATION HISTORY

On February 13, 2012, Keen filed this suit against Bovie and Andrew Makrides, Bovie's Chief Executive Officer. [Docs. 1, 34].  Keen's amended complaint alleges six operative causes of action against Bovie:   Count I for breach of contract, Count III for unpaid wages, Count IV for violation of the Florida Whistleblower Act, Count V for breach of agreement (specific performance), Count VI for contractual indemnification, and Count VII for violation of ERISA. [Doc. 34].[1]

On July 16, 2012, Bovie filed its answer and the following seven counterclaims against Keen:  First Counterclaim (Computer Fraud and Abuse Act, 18 U.S.C., § 1030(a)(5)), Second Counterclaim (Breach Of Fiduciary Duty) regarding Keen's employment agreement, Third Counterclaim (Breach Of Fiduciary Duty) regarding Keen's removal of the laptop hard-drive, Fourth Counterclaim (Conversion), Fifth Counterclaim (Fraud In The Inducement), Sixth Counterclaim (Declaratory Judgment), and Seventh Counterclaim (Attorney's Fees).

---

[1] Keen's Count II for breach of good faith and fair dealing against Bovie and Count VIII for tortious interference with employment contract by Makrides—Keen's only claim against Makrides—was dismissed.   [Doc. 52].

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  *See Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  *See id.*  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts.

## III.   DISCUSSION

### A.  BOVIE'S MOTION FOR SUMMARY JUDGMENT

Bovie moves for summary judgment as to Keen's Counts I, III, IV, and VII of the amended complaint, as well as Bovie's Second, Third, and Sixth Counterclaims.  [Doc. 93].

#### 1.  Count I for Breach of Contract and Count III for Unpaid Wages

In Count I of the amended complaint, Keen asserts a claim for breach of contract by Bovie.  [Doc. 34 at 5-6].  Keen alleges that Bovie breached the employment agreement by failing to pay him a lump-sum severance after terminating him without cause, reducing his job duties, and failing to increase his base salary.  In Count III, Keen asserts a claim for unpaid wages, alleging that he was damaged when Bovie terminated him without cause and refused to pay the severance under his employment agreement.

Bovie argues that summary judgment should be granted in its favor as to Counts I and III for two reasons: (1) the employment agreement is void as contrary to public policy, and (2) Keen failed to satisfy the condition precedent to receiving a severance.  [Doc. 93 at 13-18].

### a.  Public policy

Bovie contends the severance clause in Section 11(d) of Keen's employment contract is void as contrary to the public policy against penalizing clients for exercising the right to discharge attorneys, as announced in *Rosenberg v. Levin,* 409 So. 2d 1016 (Fla. 1982).  Bovie asserts that, under *Rosenberg*, "a lawyer terminated from employment is no longer entitled to be paid in accordance with the contract of employment."  [Doc. 93 at 15].

Determining whether a contract is contrary to public policy requires balancing the public's interest with the right to freely contract.  *See Johnson, Pope v. Forier*, 67 So. 3d 315, 318 (Fla. 2d DCA 2011).  A contract—that is not prohibited by a prior judicial decision or a constitutional or statutory provision—should not be struck down as contrary to public policy, unless it is "clearly injurious to the public good or contravenes some established interest of society."  *See Action Nissan, Inc. v. Hyundai Motor Amer.,* 617 F.Supp.2d 1177, 1189-90 (M.D. Fla. 2008) (quoting *Bituminous Cas. Corp. v. Williams*, 17 So. 2d 98, 1010-12 (1944)).

Although *Rosenberg* upholds Florida's public policy that parties should be free to terminate attorneys without economic penalty, it does not apply to the facts of this case.  Instead, *Rosenberg* applies to an attorney who was: (1) employed under a contingency-fee or fixed-fee contract and (2) prematurely discharged—*i.e.,* terminated prior to the contingency or completion of the matter.  *See Rosenberg v. Levin,* 409 So. 2d 1016, 1021 (Fla. 1982).  In that situation, the attorney can only recover based on the quantum meruit theory—the reasonable value of pre-discharge services—limited by the maximum contract fee set forth in the contingency-fee or fixed-fee contract.  *Id*.

To interpret *Rosenberg* to mean "a lawyer terminated from employment is no longer entitled to be paid in accordance with the contract of employment"—as Bovie contends—the

Court would have to extend *Rosenberg* to apply to all types of termination clauses in all attorney employment agreements, even those involving in-house counsel. The Court declines to do so.

Aside from *Rosenberg*, Section 11(d) of Keen's employment agreement does not clearly penalize a client's right to terminate an attorney. It is undisputed that Keen also served as Bovie's vice-president and participated in decisions regarding non-legal matters. Further, the clause—"the Employee may elect to terminate this Agreement"—reveals Section 11(d) relates to Keen's, not Bovie's, right to terminate.

This Court does not accept Bovie's argument that an employer has an absolute right to terminate an in-house counsel employee without liability, consequence, or regard to express contract termination provisions. Accordingly, the Court denies Bovie's motion for summary judgment as to Count I and Count III based on Bovie's argument that the severance clause is void as contrary to public policy.

### b. Condition precedent

Next, Bovie contends that Keen did not satisfy the condition precedent to receiving the severance payment by failing to provide Bovie with "at least thirty (30) days prior written notice" as required by Section 11(d) of Keen's employment agreement. [Doc. 93 at 16-18]. Keen responds that providing Bovie with such notice would have been futile where Bovie itself was required—but failed—to give Keen advance notice of his termination without cause. [Doc. 108].

"A condition precedent contemplates the performance of some act . . . upon which the obligation to perform the contract is made dependent." *Seaside Community Development Corp. v. Edwards*, 573 So. 2d 142, 145 (Fla. 1st DCA 1991). Without substantially complying with the condition precedent, one to whom a duty is owed cannot recover for the obligor's breach of

contract.  *Id*.  However, futility excuses performance of a condition precedent.  *See Alvarez v.*

*Rendon*, 953 So. 2d 702, 708-09 (Fla. 5th DCA 2007).

Section 11(c) of Keen's employment agreement provides that Bovie may terminate Keen:

. . . . <u>without</u> <u>cause</u>, with the majority approval of the Board of Directors of the Company, at any time upon at least thirty (30) days prior written notice to the Employee ("Termination Without Cause"), subject to the terms set forth in subparagraph (d) . . . .

[Doc. 90, Ex. F at § 11(c)].   Thus, in the context of a termination without cause, Keen's 30-day

notice of termination requirement hinges on Bovie first providing Keen with advance notice of

termination.   Given that Bovie gave Keen no advance notice of termination but rather made his

termination effective immediately, Keen had no ability to provide 30-days advance notice to

Bovie.   Accordingly, the Court denies Bovie's motion for summary judgment as to Count I and

Count III based on Bovie's argument that Keen failed to perform a condition precedent.

## 2. <u>Count IV: Violation of the Florida Whistleblower Act</u>

In Count IV for violation of the Florida Whistleblower Act ("FWA"), Keen contends that

Bovie terminated him in retaliation for objecting to Bovie's noncompliance with California law

and federal law in violation of the FWA.   [Doc. 34].   Bovie moves for summary judgment,

arguing that Keen did not engage in any protected activity and Bovie did not violate any law.

[Doc. 93 at 18].

The FWA prohibits an employer from retaliating against an employee for objecting to the

employer's activity, policy, or practice that actually violated the law.   Fla. Stat. § 448.102(3).

The burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973) applies to FWA claims.   *See Slater v. Energy Servs. Group Int'l Inc.,* 441 Fed. Appx. 637,

641 (11th Cir. 2011) (citing *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir.

2000)).   Keen may establish a prima facie case of retaliation by showing: (1) he engaged in a

statutorily protected activity, (2) he suffered an adverse employment action, and (3) the protected activity and adverse employment action were causally related.  *See Slater,* 441 Fed. Appx. at 641.

Keen fails to establish a prima facie case for retaliatory termination based on his alleged complaint regarding Bovie's violation of a federal social security statute, 42 U.S.C. § 1302a-7b(b).   Keen's September 2010 email was not a complaint; rather, it was a request for an explanation that could reconcile the proposed contract provision with the federal law's prohibitions.  *Id.* at 642.  Further, his email lacks close temporal proximity to his December 2011 termination.

Keen also fails to establish a prima facie case for retaliatory termination based on his alleged complaints regarding Bovie's noncompliance with California state law.  A plain reading of his July 7, 2011 and November 21, 2011 emails show that Keen did not complain about a violation; rather, he merely acknowledged prior internal discussions regarding the need to comply with the law and recommended approaches to ensure compliance.   *Id.* at 642 (plain reading of email reveals it was not a complaint but rather a reassurance).

Even assuming Keen could establish a prima facie case of retaliation, his FWA claim still fails.  As discussed below in connection with Keen's Count VII for violation of ERISA, no record evidence establishes Bovie's legitimate, nonretaliatory reason for terminating Keen was pretext.

Accordingly, the Court grants Bovie's motion for summary judgment on Count IV of the amended complaint.

### 3.  Count VII: Violation of ERISA

Bovie seeks summary judgment on Keen's Count VII for violation of ERISA.  [Doc. 93 at 22].  In Count VII, Keen asserts that Bovie interfered with his ERISA rights.  [Doc. 34].

Specifically, Keen alleges that he was a participant in Bovie's life and disability plans, and that he was an intended participant in Bovie's medical coverage plan.  He contends his termination interfered with his intended ERISA rights as well as his existing ERISA rights.

Section 510 of ERISA makes it unlawful "to discharge . . . a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled."  29 U.S.C. § 1140.   The ultimate inquiry is "whether [Bovie] had the specific intent to interfere" with Keen's ERISA rights.  *Clark v. Coats & Clark, Inc*., 990 F.2d 1217, 1222 (11th Cir. 1993).

Under the *McDonnell Douglas* burden-shifting framework, Keen must establish by the preponderance of the evidence a prima facie case of discrimination.  *Clark v. Coats & Clark, Inc*., 990 F.2d 1217, 1223 (11th Cir. 1993).   In the context of a Section 510 claim alleging unlawful discharge, Keen may establish a prima facie case of discrimination by showing that he: (1) is entitled to ERISA's protection, (2) was qualified for the position, and (3) was discharged under circumstances that give rise to an inference of discrimination.  *Id*.   To satisfy the third element, Keen must show more than the incidental loss of benefits as a result of a discharge; he must provide evidence that suggests interference with ERISA rights was a motivating factor.  *Id*. at 1223-24.

There appears to be no dispute that Keen satisfies the first and second elements.  To satisfy the third element, Keen must introduce evidence suggesting that Bovie's decision to terminate him "was directed at ERISA rights in particular."  *Id*.  Keen's ERISA interference claim centers on the alleged interference with his existing rights, *i.e*., life and disability benefits, and intended rights, *i.e.,* medical benefits.  The Court will take each in turn.

### a.   Interference with existing ERISA rights

Although Keen asserts that Bovie would "save considerable expense" by ending his existing ERISA benefits, [Doc. 108 at 19], he offers no evidence to support a finding that Bovie's decision to terminate Keen was directed at interfering with his existing ERISA rights. Thus, Keen has failed to establish a prima facie case for interference with existing ERISA rights. Further, as explained below, Bovie has stated a legitimate, non-discriminatory reason for terminating Keen, which Keen fails to show is pretextual.

### b.   Interference with intended ERISA rights

An inference of discrimination may arise if an employee's termination and enrollment in benefits are close in time and if the decision-maker knew, at the time of the termination decision, that the employee intended to enroll in benefits. *See Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010); *Reynolds v. Int'l Bus. Machines Corp.*, 320 F.Supp.2d 1290, 1299-1301 (M.D. Fla. 2004).

Bovie contends that the termination decision was made at the October 18, 2011 board of directors meeting and, at that time, it had no knowledge of Keen's intent to enroll in health benefits.  [Doc. 93 at 22, Ex. T].  However, viewing the record in the light most favorable to Keen, a question of fact exists as to when the decision to terminate Keen occurred.  The October 18, 2011 board minutes state that the board granted Makrides the authority to terminate Keen, and it is undisputed that Keen was not actually terminated until December 9, 2011.

Pointing to the December 1, 2011 and December 2, 2011 memoranda from MacElroy and his December 2, 2011 email to various board members, Keen contends that Bovie knew he intended to enroll in medical benefits at the time of his December 9, 2011 termination.  [Doc. 108 at 19].  However, Keen's focus on the effective date of his termination—an undisputed fact—is misplaced; the inquiry here centers on the date of Bovie's termination decision.

Despite the factual disputes, the Court will assume for the purposes of this order that Keen can establish a prima facie case of interference with his intended ERISA rights.  However, Bovie is still entitled to summary judgment.  Bovie has articulated a legitimate, nondiscriminatory reason for termination—Keen's  unsatisfactory performance—and Keen fails to raise a genuine issue of material fact that the reason is pretextual—*i.e.*, that Bovie had a specific intent to interfere with Keen's ERISA rights.  *See Gitlitz v. Compagnie Nationale Air France*, 129 F. 3d 554, 559 (11th Cir. 1997).

Although Keen may disagree with Bovie's reasons for believing that he performed unsatisfactorily, when poor performance is the reason for termination, "the question is not whether [Keen]'s performance was *actually* poor, but whether [Bovie] believed [Keen]'s performance was poor." *Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253, 1266 (11th Cir. 2010).   Here, Keen admits that his working relationship with Bovie had deteriorated and Bovie was unsatisfied with his performance.  For example, Keen knew Bovie believed that he was insubordinate.  He also knew Bovie began discussing his termination as early as May 2011 and had tried to convince Keen to leave voluntarily.  Keen's assertion or belief that Bovie would "save considerable expense" by preventing his enrollment in medical benefits—with no supporting facts—fails to establish pretext.

Bovie has articulated a legitimate, nondiscriminatory reason for terminating Keen and Keen has not provided evidence sufficient to create a genuine issue of fact as to whether that reason is pretext for interfering with Keen's ERISA rights.   Accordingly, the Court grants Bovie's motion for summary judgment on Count VII.

### 4.  Second Counterclaim: Breach of Fiduciary Duty

Bovie seeks summary judgment on its second counterclaim for breach of fiduciary duty. [Doc. 93].  In its second counterclaim, Bovie alleges that Keen's conduct during the negotiation

and drafting of his employment agreement constitutes a breach of fiduciary duty.   [Doc. 40].

Specifically, Bovie alleges that Keen failed to advise Bovie to seek independent counsel and

drafted a contract that was not fair or reasonable to Bovie.   [*Id.*].

An attorney has a duty to "handle his client's affairs with the utmost degree of honesty,

forthrightness, loyalty and fidelity."   *Smyrna Developers, Inc. v. Bornstein*, 177 So. 2d 16, 18

(Fla. 2d DCA 1965).     Business transactions between an attorney and client are closely

scrutinized, and the attorney must exercise a greater measure of good faith than that required in

an arm's length transaction.   *See Abstract and Title Corp. of Fla. v. Cochran*, 414 So. 2d 284,

285 (Fla. 4th DCA 1982).   When entering a business transaction with a client, the attorney has

the burden of showing not only that he used no undue influence, but also that: (1) he gave his

client all the information and advice which would have been his duty to give but for his interest,

and (2) the transaction was as beneficial to the client as it would have been had the transaction

been with a stranger.   *See Gomez v. Hawkins*, 623 F.Supp. 194, 190 (N.D. Fla. 1985); *Bolles v.

O'Brien*, 59 So. 133, 134 (Fla. 1912).

Bovie contends Keen was required, but failed, to advise Bovie to seek independent

counsel in writing and to obtain Bovie's written waiver of independent counsel.   [Doc. 93 at 5,

23].   Keen responds that Bovie in fact had independent counsel for the transaction, which Bovie,

in turn, disputes.   [Doc. 108 at 20].   The Court finds there are issues of fact as to whether Keen

violated his fiduciary duty to Bovie.   Accordingly, the Court denies Bovie's motion for summary

judgment on its second counterclaim.

### 5.  <u>Third Counterclaim: Breach of Fiduciary Duty</u>

Bovie also seeks summary judgment on its third counterclaim for breach of fiduciary

duty.   [Doc. 93 at 24-25].   In its third counterclaim, Bovie alleges that Keen breached his

fiduciary duty by removing the hard drive of the laptop owned by Bovie.   [Doc. 40].

Bovie's motion for summary judgment appears to argue that Keen breached his fiduciary duties to Bovie by violating ethical rules.  However, Bovie fails to identify the specific fiduciary duty owed to it, show how Keen's conduct violated that duty, and show how that breach damaged Bovie.  Therefore, the Court denies Bovie's motion for summary judgment on its third counterclaim.

### 6.  <u>Sixth Counterclaim: Declaratory Judgment</u>

Finally, Bovie moves for summary judgment on its sixth counterclaim for declaratory judgment.  [Doc. 93 at 25].   In its sixth counterclaim, Bovie seeks a declaratory judgment that Keen's employment agreement is unenforceable based on its contention that the severance clause violates Florida's public policy against constraining a client's right to discharge its attorney at any time.  [Doc. 40; Doc. 106 at 4-6].   However, as previously discussed in connection with Bovie's motion for summary judgment on Counts I and III, the Court rejects Bovie's argument that the employment agreement is unenforceable.

Further, the Court notes that Bovie's motion for summary judgment appears to change the basis for its requested declaratory judgment.  Specifically, Bovie's motion argues that the alleged breaches of fiduciary duty underlying its second and third counterclaims—regarding Keen's conduct prior to his employment and after his termination, respectively—entitle Bovie to declaratory judgment.  [Doc. 93 at 24-25].   Even if the Court were to entertain what appears to be a different argument than that alleged in its counterclaim, Bovie's assertions are vague and general.   Accordingly, the Court denies Bovie's motion for summary judgment as to its sixth counterclaim.

### B.  KEEN'S MOTION FOR SUMMARY JUDGMENT

Keen moves for partial summary judgment as to his Count I and summary judgment on all of Bovie's counterclaims.  [Doc. 90].

### 1.  <u>Count I: Breach of Contract</u>

First, Keen seeks partial summary judgment as to whether his termination was "without cause" under his employment agreement.  [Doc. 90].   The employment agreement authorizes and defines Bovie's methods of termination—"Termination Without Cause" and "Termination For Cause."

It is undisputed that Bovie did not terminate Keen for a reason set forth in the definition of "Termination For Cause"—*i.e.*, a violation of the noncompete provision or a court's finding of guilt for a crime of moral turpitude. Thus, under the plain language of the contract, Bovie's termination was "without cause."

In response, Bovie argues that the Court should disregard the "Termination For Cause" definition and hold that reasons constituting "with cause" termination "extend[] beyond the text of the Employment Agreement," because failing to do so would ignore Florida's public policy that a client be able to terminate its attorney with or without cause.  [Doc. 106 at 2].  The Court rejects Bovie's contention that upholding the contract definitions impinges on a client's ability to terminate its attorney for any reason.  By defining "for cause" and "without cause" terminations, the agreement affects Keen's right to severance after termination, not Bovie's ability to terminate Keen.  Having rejected Bovie's argument that the Court should disregard the "Termination For Cause" definition, the Court also rejects Bovie's conclusion that its reasons for terminating Keen—despite being absent from the "Termination For Cause" definition—could constitute a termination for cause.

The Court finds Keen's termination was "without cause" as defined by the employment agreement and grants partial summary judgment in Keen's favor on this issue.

## 2. First Counterclaim: Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)

Next, Keen moves for summary judgment on Bovie's first counterclaim.  [Doc. 90 at 8-14].   In its first counterclaim, Bovie alleges that Keen's removal of the laptop's hard drive violated Section 1030(a)(5) of the Computer Fraud and Abuse Act ("CFAA").  [Doc. 40].

Section 1030(a)(5) of the CFAA provides for liability on a person who:

A. knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer;

B. intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or

C. intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

18 U.S.C. § 1030(a)(5).  A civil remedy is available to any person who suffers damage or loss from a CFAA violation.  *See* 18 U.S.C. § 1030(g).   Bovie must show a "loss to 1 or more persons during any 1–year period . . .  aggregating at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i)(I).   "Loss" is "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).

Keen first contends that summary judgment should be granted in his favor, because the laptop is not a "protected computer" under the CFAA.  [Doc. 90 at 12].  A "protected computer" is a computer that is "used in or affecting interstate or foreign commerce or communication."  18 U.S.C. § 1030(e)(2).  Keen argues that his laptop is a "virtual terminal" to connect to his two desktop computers at Bovie's offices, and, thus, does not qualify.  However, the Court rejects

this argument because Keen provides no basis for finding that a "virtual terminal" cannot be a computer used in or affecting interstate commerce or communication.   Further, Keen does not submit any evidence that the desktop computers to which his laptop connected were not used in, or did not affect, interstate commerce or communication. *See* 18 U.S.C. § 1030(e)(11).

Further, Keen contends that Bovie has not provided evidence of damage and costs in excess of $5,000.   [Doc. 90 at 13-14].   Pointing to the invoices from Bovie's forensic and data recovery examiner—specifically, the entries relating to two desktop computers—Keen argues that Bovie's damages should not include expenses relating to the analysis conducted on any computers other than his laptop.   However, given that Keen used both the laptop and the desktop computers, it is reasonable to assume an examination of the desktop computers was necessary in responding to, or assessing the extent of, damage to the laptop.

Finally, Keen asserts that he was permitted access to the laptop.   [Doc. 90 at 10].   Both Sections 1030(a)(5)(B) and 1030(a)(5)(C) require a showing that Keen's access to the laptop was "without authorization," *i.e.*, that his initial access was not permitted.   *See Clarity Services, Inc. v. Barney*, 698 F.Supp.2d 1309, 1314 (M.D. Fla. 2010).   Here, it is undisputed that Bovie permitted Keen's access the laptop.   Thus, Keen's access was not "without authorization" and the Court grants Keen's motion for summary judgment with respect to Bovie's first counterclaim for violations of Sections 1030(a)(5)(B) and Sections 1030(a)(5)(C) of the CFAA.

However, the Court denies summary judgment with respect to Keen's alleged violation of Section 1030(a)(5)(A) of the CFAA.   Keen contends that summary judgment is warranted, because Bovie failed to prove that his conduct caused damage to the laptop.   "Damage" is "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).   This requires "some diminution in the completeness or usability of data or

information" or a showing that certain data was not readily obtainable.  *Trademotion, LLC v. Marketcliq, Inc.,* 857 F.Supp.2d 1285, 1292 (M.D. Fla. 2012) (citation and quotation omitted).

Here, Keen testified that he used a program to wipe the laptop clean, and Bovie's data recovery vendor report states that no data was recoverable.  Such permanent deletion of data constitutes damage.  *See Southeastern Mechanical Servs., Inc. v. Brody*, 2008 WL 4613046 (M.D. Fla. Oct. 15, 2008).  Keen's assertion that damage was not intentional because he believed that the laptop's data had corresponding original and backup copies is insufficient to show that no genuine issue of material fact exists as to whether Keen permanently deleted Bovie's data from—and damaged—the laptop.

Accordingly, the Court denies Keen's motion for summary judgment on Bovie's first counterclaim to the extent it is based on Section 1030(a)(5)(A) of the CFAA.

### 3.  <u>Second Counterclaim: Breach of Fiduciary Duty</u>

Keen moves for summary judgment on Bovie's second counterclaim for breach of fiduciary duty based on Keen's conduct during the negotiation and drafting of his employment agreement.  [Doc. 90].   Keen contends summary judgment should be granted in his favor, because he orally advised Bovie to seek independent counsel and he fully explained the terms of his employment contract to Bovie.  [*Id.* at 15].

As already discussed in connection with Bovie's motion for summary judgment on the second counterclaim, whether Keen sufficiently advised Bovie to obtain independent counsel and whether Bovie in fact obtained independent counsel are disputed questions of material fact.  Likewise, issues of fact exist as to whether Keen fully explained the terms of his employment contract to Bovie.  *See Bolles v. O'Brien*, 59 So. 133, 135 (Fla. 1912) (attorney must fully advise client of content and legal effect of transaction).   Keen asserts that contract negotiations lasted for several months and his contract was reviewed by Bovie's board of directors and other

sophisticated, competent businessmen.  However, Bovie contends that it did not understand the renewal and severance provisions, and that, upon discovering their contents around March 2011, Bovie asked Keen to revise his contract.

The Court finds that genuine issues of material exist as to whether Keen violated his fiduciary duty to Bovie.  Accordingly, the Court denies Keen's motion for summary judgment as to Bovie's second counterclaim.

### 4. <u>Third Counterclaim: Breach of Fiduciary Duty</u>

Keen moves for summary judgment on Bovie's third counterclaim for breach of fiduciary duty based on Keen's removal of the laptop hard drive.  [Doc. 90 at 19-21].  However, Keen's motion for summary judgment simply asserts—with no legal authority—that no fiduciary duty exists after termination, and if a duty does exist, that he should be granted summary judgment because Bovie failed to prove that wiping the hard drive breached that duty.  Whether Keen's conduct in removing the hard drive from the laptop owned by Bovie breached his fiduciary duty remains an issue for the jury.  Accordingly, the Court denies Keen's motion for summary judgment on Bovie's third counterclaim.

### 5. <u>Fourth Counterclaim: Conversion</u>

Keen moves for summary judgment on Bovie's fourth counterclaim for conversion based on Keen's removal of the laptop hard drive.   [Doc. 90 at 22].   "[C]onversion is an unauthorized act which deprives another of his property permanently or for an indefinite time."  *Nat'l Union Fire Ins. Co. of Pennsylvania v. Carib Aviation, Inc*., 759 F.2d 873, 878 (11th Cir. 1985) (quoting *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman),* 450 So. 2d 1157, 1160-61 (Fla. 3d DCA1984)).

Although Keen admits he deleted Bovie's files from th laptop, he contends that he did not deprive Bovie of that data, because Bovie's computer servers automatically—and alternatively,

Keen manually—kept back-up copies of that data.  However, Keen fails to show that no genuine

issue of material fact exists as to whether his conduct deprived Bovie of its data.  *See Furmanite*

*Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1144 (M.D. Fla. 2007) (denying

summary judgment on claim for conversion of computer files where questions of fact regarding

whether files were missing).   Further, to the extent Keen contends that he did not intend to

permanently deprive Bovie of its property, the tort of conversion does not require a showing of

specific wrongful intent.   *See Bookworld Trade, Inc. v. Dau*ghters of St. Paul, Inc., 532

F.Supp.2d 1350, 1363 (M.D. Fla. 2007) (citing *City of Cars, Inc. v. Simms*, 526 So. 2d 129 (Fla.

5th DCA 1988)).   Accordingly, the Court denies Keen's motion for summary judgment on

Bovie's fourth counterclaim.

## 6.  <u>Fifth Counterclaim: Fraud in the Inducement</u>

Keen moves for summary judgment on Bovie's fifth counterclaim for fraud in the

inducement.  [Doc. 90 at 23].  In its fifth counterclaim, Bovie alleges that Keen knowingly and

intentionally concealed Keen's obligation to advise Bovie of its right to seek independent legal

counsel or obtain Bovie's written waiver of the right to seek counsel.  [Doc. 40 at 19-21].

Fraud in the inducement requires that Bovie show: (1) Keen made a misrepresentation of

a material fact; (2) Keen knew or should have known of the falsity of the statement; (3) Keen

intended that the representation would induce Bovie to rely and act on it; and (4) Bovie suffered

injury in justifiable reliance on the representation.  *See Bookworld Trade, Inc. v. Daughters of St.*

*Paul, Inc*., 532 F.Supp.2d 1350, 1363 (M.D. Fla. 2007) (citing *Joseph v. Liberty Nat'l Bank*, 873

So. 2d 384, 388 (Fla. 5th DCA 2004)).

Keen contends summary judgment should be entered in his favor, because Bovie fails to

show that Keen knowingly and intentionally concealed any fact.  Assuming Keen's failure to

provide   written   advice   to,   or   obtain   a   written   waiver   from,   Bovie   could   constitute   a

"misrepresentation," Keen's knowledge and intent are factual issues that should be determined by the jury.  Accordingly, the Court denies Keen's motion for summary judgment on Bovie's fifth counterclaim.

### 7. <u>Sixth Counterclaim: Declaratory Judgment</u>

Keen moves for summary judgment on Bovie's sixth counterclaim for a declaratory judgment that Keen's employment agreement is unenforceable.  [Doc. 40 at 21-22].  Keen contends that the severance provision does not violate Florida's public policy.  [Doc. 90 at 24-25].  As previously discussed in connection with Bovie's motion for summary judgment on Keen's Counts I and III, the Court agrees.  Accordingly, the Court grants Keen's motion for summary judgment on Bovie's sixth counterclaim.[2]

### 8. <u>Seventh Counterclaim: Attorney's Fees</u>

In its seventh counterclaim, Bovie seeks an award of attorney's fees pursuant to Florida Statutes § 448.104, the attorney's fees provision of the FWA.  Section 448.104 provides that the Court "may award reasonable attorney's fees, court costs, and expenses to the prevailing party."

Keen seeks summary judgment on the basis that no separate cause of action exists for attorneys' fees.  [Doc. 90 at 25].  However, the Court construes Bovie's claim for attorneys' fees in conjunction with Keen's FWA claim set forth in Count IV.  Given that the Court grants Bovie's motion for summary judgment as to Keen's FWA claim set forth in Count IV, the Court denies Keen's motion for summary judgment on this counterclaim.

---

[2] In its sixth counterclaim, Bovie identifies both the severance clause and the one-year-and-one-day nonrenewal notice clause as violations of public policy.  However, Keen's motion for summary judgment does not address the one-year-and-one-day notice clause, [Doc. 90], and in its response in opposition, Bovie does not object to or otherwise address that clause.  [Doc. 106].  Thus, the Court assumes Bovie abandoned this argument.

IV.     **CONCLUSION**

Keen's motion for summary judgment is granted in part and denied in part.  His motion is granted as to whether his termination was "without cause" under his employment agreement and as to Bovie's Sixth Counterclaim.  It is otherwise denied.

Bovie's motion for summary judgment is granted in part and denied in part.  Bovie's motion for summary judgment is granted as to Count IV and Count VII of the amended complaint.  It is otherwise denied.

**DONE AND ORDERED** at Tampa, Florida, this 7th day of May, 2013.

SUSAN C. BUCKLEW
United States District Judge

Copies To: Counsel of Record